IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROCKY MOUNTAIN POWER,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:11-CV- 00227<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Rocky Mountain Power's ("RMP") motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The court held a hearing on the motion on July 20, 2011. At the hearing, RMP was represented by Rick L. Rose, and Plaintiff was represented by Tyler L. Murray. The court took the matter under advisement. The court has considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Rocky Mountain Power delivers electricity to customers in Utah, Wyoming, and Idaho. On September 20, 2005, electricity allegedly arced from insulators on a power pole, referred to as power pole 25, across the cross-arm of the pole and allegedly caused the cross-arm to burn, fall,

and ignite a wild land fire (known as the "Puddle Valley Fire") that burned 3,571 acres owned by the United States. The transmission line that allegedly started the Puddle Valley Fire is owned, operated, and maintained by Rocky Mountain Power. Suppressing the Puddle Valley Fire cost the United States $77,013.96.

Based on these facts, the United States filed suit against Rocky Mountain Power under Utah Code Ann. § 65A-3-4 to recover the costs of suppressing the fire. Section 65A-3-4 reads: "Any person responsible for the existence or spread of a wild land fire necessitating suppression action shall be liable for the payment of the costs of the suppression action." RMP responded by filing a motion to dismiss asserting that the United States fails to state a plausible claim for relief.

## DISCUSSION

RMP brings its motion to dismiss asserting that Plaintiff's Complaint fails to state a claim against it under Utah Code Ann. § 65A-3-4. RMP argues that (1) Utah Code Ann. § 65A-3-4 is inapplicable and only encompasses illegal or prohibited activities on state lands; (2) Utah Code Ann. § 65A-3-4 does not apply to federal lands nor does the statute allow the federal government to recover fire suppression costs; and (3) Utah Code Ann. § 65A-3-4 does not provide for liability regardless of fault. The court will address each of these grounds in turn.

**1. Illegal or Prohibited Activities on State Lands.**

Plaintiff argues that it can state a cause of action under the plain language of Section 65A-3-4. RMP, however, contends that the court must look at the statute in the context of the statutory section in which it belongs.

Plaintiff first asserts that this court's interpretation of Section 65A-3-4 must look only to the language of the statute itself and that when the words are clear, however incongruous they

may appear in policy application, the court must interpret them as written. *State v. Wallace*, 150 P.3d 540, 542 (Utah 2006); *State v. Anderson*, 169 P.3d 778, 782 (Utah App. 2007). Plaintiff contends that this court must leave it to the Legislature to make corrections when warranted. Plaintiff also relies on general statutory interpretation rules stating that in interpreting a statute as a whole, a court may not infer substantive terms into the text that are not already there or rewrite the statute to conform to an intention not expressed. *General Contractors v. Board of Oil, Gas and Mining*, 38 P.3d 291, 301 (Utah 2001) (quoting *Berrett v. Purser & Edwards*, 876 P.2d 367, 370 (Utah 1994)). A court should give effect to any omission in the statute's language by presuming that the omission is purposeful. *State v. Jacobs*, 144 P.3d 226, 228-299 (Utah App. 2006) (quoting *Carrier*, 104 P.3d at 1216).

RMP asserts that it is not asking this court to rewrite the statute. Rahter, RMP simply asks the court to interpret the subject statute as a whole. RMP relies on rules of statutory construction requiring the court to "read the plain language of the statute as a whole." *Archuleta v. St. Mark's Hosp.*, 238 P.3d 1044, 1046 (Utah 2010). Section 65A-3-1 is within Chapter 3 of Title 65A, which is titled "Illegal Activities on State Lands." Within Chapter 3 of Title 65A, Section 65A-3-1 is titled trespassing on state land penalties, and Section 65A-3-2 is titled prohibited acts on state land.

The United States, on the other hand, urges the Court to look at § 65A-3-4 in isolation and to ignore the proceeding sections and statutory scheme of Chapter 3. Interpreting a single statutory section in isolation, irrespective of its statutory context, is improper. *See Anderson v. Bell*, 234 P.3d 1147, 1150 (Utah 2010). Plaintiff also argues that absent circumstances where a statute is ambiguous, a court many not look to the caption of a statute to determine its meaning.

3

*Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992). The Utah Legislature has made clear that headings, titles, and summary descriptions are not law and are only intended to highlight the content of each section, part, chapter, or title for legislators. Utah Code Ann. § 68-3-13. The court agrees with that law. However, irrespective of whether the court looks at headings and titles, the court must interpret the contested statute in the context of the entire statutory scheme of Chapter 3.

The statutory scheme of Chapter 3 makes clear that the State may only recover its fire suppression costs in cases involving certain prohibited acts on state lands. While "[t]he title of a statute is not part of the text of a statute ... it is persuasive and can aid in ascertaining the statute's correct interpretation and application." *State v. Gallegos*, 171 P.3d 426, 430 (Utah 2007).

The title of Chapter 3 combined with the sections under Chapter 3 demonstrates the Legislature's intent. The Legislature's intent is to allow the state to recover wildfire suppression costs only from responsible parties who were either trespassing or committing prohibited acts. *See Duke v. Graham*, 158 P.3d 540, 545 (Utah 2007) (stating that when a court is interpreting a statute, its "primary goal is to evince the true intent and purpose of the legislature.").

In this case, RMP was not trespassing nor is there any allegation that RMP committed any of the prohibited acts identified in § 65A-3-2, which include: throwing or placing any lighted cigarette, cigar, firecracker, ashes, or other flaming or glowing substance which may cause a fire on a highway or wildland; obstructing the state forester, or any of his deputies, in the performance of controlling a fire; refusing, on proper request of the state forester or any of his deputies, to assist in the controlling of a fire, without good and sufficient reason; or firing any

4

tracer or incendiary ammunition anywhere except within the confines of established military reservations.

Considering Chapter 3 as a whole, it is clear that the term "responsible for" in § 65A-3-4 refers to someone who has violated the "prohibited acts" identified in § 65A-3-2. Since the district attorney is authorized in the same sentence to both prosecute someone who violates § 65A-3-2 and to seek fire suppression costs from that person, it is only logical that the same conduct is required for both criminal and civil liability under the statute. Section 65A-3-4 follows and is necessary because public fire suppression costs are not normally recoverable at common law in the absence of a statute. *See City of Flagstaff v. Atchison, T. & Santa Fe Ry.,* 719 F.2d 322, 323-24 (9th Cir. 1983); *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1080 (D.C. Cir. 1984). The proximity of the two sections demonstrates that the Legislature intended for the recovery of fire suppression costs in Section 65A-3-4 to be tied to the specific prohibited acts in Section 65A-3-2. If the Legislature did not want the section regarding suppression costs to be tethered to the "prohibited acts" section, the Legislature would have placed the section in a different location.

Based on this court's interpretation of Section 65A-3-4 within the entire context of Chapter 3 of Title 65A, the court concludes that Plaintiff may only state a claim for suppression costs against RMP if RMP committed a "prohibited act" listed in Section 65A-3-2. Because Plaintiff makes no allegation that RMP committed any "prohibited acts," the court concludes that Plaintiff has not stated a claim under Section 65A-3-4. Accordingly, the court grants RMP's motion to dismiss on this ground.

**2. Federal Lands**

RMP further argues that Plaintiff cannot state a claim under Section 65A-3-4 because the statute does not provide for the recovery of suppression costs by non-state entities. Title 65A is titled "State Lands" and Chapter 3 of Title 65A is titled "Illegal Activities on State Lands." State lands are defined as lands owned by the state by virtue of the state's sovereignty. Title 65A specifically excludes federal lands; it provides that the Division shall provide for forestry and fire control activities as required in § 65A-8-101. Section 65A-8-101 limits what lands the Division has fire control responsibility over to "nonfederal" lands (§ 65A-8-101 (1)(a),(b), and (d)). Also, § 65A-8-210 outlines the responsibility of the Division and State agencies to fight uncontrolled fires and only state land is referenced.

Plaintiff contends that because Section 65A-3-4 does not expressly limit its application to state lands or to actions by the State of Utah, section 65A-3-4 applies to federal lands. In making this contention, however, Plaintiff again asks the Court to consider § 65A-3-4 in a vacuum. Although Section 65A-3-4 is broadly worded, when viewed in the context of the entire statutory scheme in which it is located, it cannot be construed to provide for the recovery of fire suppression costs by anyone other than a state entity. The immediately proceeding section states: "The county attorney or district attorney… shall prosecute any criminal violations of this chapter and shall initiate a civil action to recover suppression costs incurred by the county or state for suppression of fire on private land." Utah Code Ann. § 65A-3-3(2) makes clear that only a Utah county or district attorney may prosecute criminal violations and/or initiate a civil action to recover suppression costs under Chapter 3. Had the Utah Legislature intended to allow the federal government to recover its fire suppression costs for suppressing fires, it could have easily included that language. But the Legislature did not do so. Section 65A-3-4, therefore, tells the

county attorney or district attorney who they may look to for recovery of fire suppression costs incurred by counties or the state. There is no similar provision for recovery of suppression costs on federal lands, or for recovery of suppression costs by anyone other than the state or counties of the State.

Plaintiff attempts to overcome the fact that Chapter 3 expressly limits enforcement to Utah county and district attorneys by citing to other state cases where the federal government was allowed to rely on state law to recover its fire suppression costs. *United States v. Chesapeake & O. Ry. Co.*, 130 F.2d 308 (4th Cir. 1942); *United States v. Boone*, 476 F.2d 276 (10th Cir. 1973); *United States v. Union Pacific Railroad Co.,* 565 F. Supp. 2d 1136 (E.D. Cal. 2008). Each of these cases, however, involved statutes that are far different from the statute at issue here. The statue in *Boone* expressly allowed any injured landowner to bring an action. *See Boone*, 476 F.2d at 277. The statute in *Union Pacific Railroad Co*. also allowed any property owner to recover damages caused by fire to their property. *See Union Pacific Railroad Co*., 565 F. Supp. 2d at 1142. Although the language contained in the statute in *Chesapeake & O. Ry. Co*. is less clear with respect to a private party's rights, the *Chesapeake* court clearly based its decision on the grounds that the federal government was the landowner. *See* 130 F.2d at 310 ("where one's property is endangered by a negligent act, the owner is justified in protecting his property").

Moreover, both *Union Pacific Railroad Co*. and *Chesapeake & O. Ry. Co*. involved statutes requiring that the injured property owner demonstrate that the fire was started due to the defendant's negligence. Tort law generally allows private citizens to recover their own costs incurred to protect their property when the danger was negligently caused by another. *See Chesapeake & Ohio Ry. Co*., 130 F.2d at 310.

The United States, however, has not brought a negligence claim against RMP based on its status as a landowner. Rather, the United States has attempted to bring a claim under Utah Code Ann. § 65A-3-4 and its ability to assert the claim must be evident from that statute. While the statutes in the cases Plaintiff cites allowed any property owner to recover for suppression costs, the court's interpretation of Section 65A-3-4 in connection with Chapter 3 as a whole, does not allow the United States to maintain an action for fire suppression costs.

The court concludes, therefore, that Chapter 3 of Title 65A as a whole contemplates that only Utah state and county entities can recover fire suppression costs under Section 65A-3-4. Because Section 65A-3-4 does not allow the federal government to recover fire suppression costs, Plaintiff cannot state a claim against RMP for such suppression costs. Accordingly, the court grants RMP's motion to dismiss on this ground.

**3. Strict Liability**

Even if this court were to find that Plaintiff could state a claim against RMP for suppression costs under Section 65A-3-4, RMP argues that Section 65A-3-4 provides for a negligence standard, not a strict liability standard. The United States suggests that if RMP facilities were involved in any way with the fire, RMP is "responsible" for fire suppression costs regardless of fault.

Section 65A-3-4 states that the liable party must be "responsible" for the existence or spread of the wild land fire in order for the State to be able to recover its suppression costs. RMP argues that the term "responsible" is ordinarily understood to mean able to answer for one's conduct. Plaintiff's complaint, however, seeks to hold RMP liable irrespective of its conduct.

A Utah district court has already considered the meaning of the term "responsible" in Section 65A-3-4 and determined that the section imposes a negligence standard of care. *See Morgan County et al. v. Pioneer Ranch, LLC et al.*, 2nd District, Davis County, Civil No. 980700100.

Holding a party liable for damages regardless of fault is contrary to general common law tort principles and Utah's tort reform statute. *See Deats v. Commercial Security Bank,* 746 P.2d 1191 ( Utah Ap.. 1987); *Beach v. University of Utah,* 726 P.2d 413 ( Utah 1986); *Williams v. Ogden Union R.R., Ry. & Depot Co.,* 230P.2d 315 ( 1951) ("The mere fact that an accident or injury occurred does not support a conclusion that the defendant or any other party was at fault or was negligent."). If the Legislature intends to make an exception to this general rule, the statute must clearly provide for liability regardless of fault. *See* 73 Am. Jur. 2d Statutes § 190 ("Generally, statutes in derogation of the common law are to be strictly construed. Under this rule, legislation creating a liability where no liability existed at common law should be construed most favorably to the person or entity subjected to the liability and against the claimant for damages.").

Plaintiff argues that the phrase "shall be liable" as used in § 65A-3-4 implies strict liability. The words "shall be liable" appear in many Utah statutes that are recognized as strict liability statutes. But the phrase "shall be liable" in Section 65A-3-4 does not stand alone. Section 65A-3-4 also uses the term "responsible." And, "shall be liable" is connected to the specified prohibited activities identified in Section 65A-3-2. Section 65A-3-4 allows the State to recover costs for having to suppress any wildfires resulting from the prohibited activities in Section 65A-3-2.

Comparing Section 65A-3-4 to the other Utah statutes where strict liability is imposed demonstrates that Section 65A-3-4 does not impose general strict liability. For example, Utah's "dog bite" statute, Utah Code Ann. § 18-1-1, expressly states strict liability. If the Legislature had intended to make a party automatically liable for fire suppression costs regardless of fault or conduct, it could have done so with similar language. The Legislature did not.

The "strict liability" statutes cited by Plaintiff all involve the decision to engage in specific risky activities. Thus liability under these statutes is tied to a specific activity, such as harboring animals or maintaining hazardous substances, not to the type of harm suffered by a plaintiff. In other words, the phrases "shall be liable" or "is strictly liable" as used in the statutes cited by Plaintiff do not stand alone because they are connected to a specified activity. Liability under Section 65A-3-4 is tied to the prohibited acts in Section 65A-3-2. Section 65A-3-4 does not impose strict liability in general.

Moreover, RMP contends that if the Legislature had intended § 65A-3-4 to authorize strict liability against any party who caused a wildfire, regardless of fault or the nature of their activity, it would be unnecessary and superfluous to mention § 65A-3-4 in the Abandoned Fire Statute. The court agrees that the fact that the Legislature found it necessary to include a reference to recovery under § 65A-3-4 in the Abandoned Fire Statue shows that the Legislature did not intend § 65A-3-4 to be an absolute liability statute but, instead, intended it to provide liability only for specific prohibited acts.

Therefore, even if the court were to conclude that Plaintiff could state a claim against RMP for fire suppression costs under Section 65A-3-4, the court finds that Section 65A-3-4

would not hold RMP strictly liable for fire suppression costs simply because it owned and operated the power line that allegedly started the fire.

## CONCLUSION

Based on the above reasoning, Defendant Rocky Mountain Power's Motion to Dismiss is GRANTED and Plaintiff's Complaint is dismissed.

DATED this 4th day of August, 2011.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge